USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/10/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                           :
EXPERTCONNECT, L.L.C.,                 :
                                                           :
                             Plaintiff,  :         18 Civ. 4828 (LGS)
                                                           :
                    -against-                  :         **OPINION AND ORDER**
                                                            :
MAYOKIA FOWLER, et. al.,            :
                                                           :
                                       Defendants. :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff ExpertConnect, L.L.C. ("ExpertConnect") brings this action against Mayokia Fowler, Dipali Parmar and Strafluence, L.L.C., alleging violations of the Defend Trade Secrets Act (the "DTSA") and various New York state law claims. Defendants move to dismiss the Amended Complaint (the "Complaint"). For the reasons below, the motion is denied as to Counts I through VII, and granted as to Count VIII.

**I.    BACKGROUND**

       The following facts are taken from the Complaint and assumed to be true only for the purposes of this motion. *See Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).

       **A.    Plaintiff's Business Model and Trade Secrets**

       ExpertConnect is a Delaware limited liability company with its headquarters in New York. ExpertConnect provides access to subject matter experts to support the research efforts of "asset managers, corporations, and professional service firms." ExpertConnect recruits subject matter experts, provides them with legal compliance training, and markets their expertise to clients through one-on-one phone consultations, in-person meetings, and custom surveys. Over time, in matching experts according to client requests, ExpertConnect developed a list of

"subject matter experts, pricing and pricing methodologies, sales data, expert quantifiers and preferences, [and] marketing materials." This information is "confidential and proprietary business information." In addition to these categories, specific files are alleged to be trade secrets, including a PowerPoint regarding "ExpertConnect . . . capabilities," two client contracts (the "Ruane contract" and the "stifel contract"), a "Renewal . . . Proposal," and "Process . . . Disclosures" for the client JMP. ExpertConnect spent "significant amounts of time and money" in "developing, improving, and protecting" this information. "A competitor who had access to this data and analysis would have an unfair competitive advantage that could enable them, for example, to use ExpertConnect's own data and analysis to underprice ExpertConnect and divert customers."

Plaintiff took several steps to protect these trade secrets. First, it required its employees to enter into confidentiality and non-disclosure agreements (the "NDAs"), which state that employees shall make use of confidential information only "for the purpose of performing his/her duties as an employee." Second, ExpertConnect made the trade secrets accessible only through "password protected entry points." Third, in its Employee Handbook, Plaintiff prohibited employees, from "misus[ing], or remov[ing] without authorization, [ ] employee lists, client lists, expert lists, records, or confidential information of any kind."

### B. Fowler and Parmar's Employment and Departure

#### 1. Hiring

In January 2012, Plaintiff hired Defendant Parmar as a "Senior Manager, Research and Account Management." Later that year, Plaintiff hired Defendant Fowler to be "Vice President [of] Operations, Recruiting and Research Management." Fowler received an offer letter that described her role as "supervising and managing recruiting efforts, research management functions, and any other client service function." Parmar and Fowler worked on research that

"specifically included determining, in response to client requests, the best ExpertConnect experts to propose to [ ] clients."

### 2. The Confidentiality and Non-Disclosure Agreements

Fowler and Parmar entered into several agreements which prohibited them from sharing confidential information, including the NDA and the Employee Handbook.

The NDAs contain several provisions restricting the use and disclosure of information employees acquire at ExpertConnect. The NDAs states that an employee "shall make use of the Confidential Information only for the purpose of performing his/her duties as an employee" (defined in the NDAs as the "Transaction") and prohibits the employee from "publiciz[ing] or disclos[ing], other than to those persons to whom Confidential Information may be disclosed hereunder[,] the existence and the terms of the Transaction" for two years after their discharge date. The NDAs define Confidential Information as information disclosed between "the first day of employment to the date of discharge" that "is or should be reasonably understood to be confidential or proprietary," including "industry consultants or subject matter experts who are registered or listed in Discloser's proprietary database, compliance training materials, e-mail marketing techniques and strategies, . . . customer lists . . . and other unpublished information."

### 3. Fowler and Parmar's Departure

In July 2017, ExpertConnect informed Fowler that it was planning to terminate her position. ExpertConnect and Fowler entered into a Separation Agreement that provided for her separation from ExpertConnect on September 29, 2017 ("Separation Date").

By September 2017, Fowler and Parmar had begun to execute a plan to start a new company that would compete with ExpertConnect. On September 25, 2017, four days before her departure from ExpertConnect, Fowler formed Strafluence and used Plaintiff's equipment to

3

store corporate filings related to Strafluence. Days before her Separation Date, Fowler also "downloaded and printed highly sensitive ExpertConnect documents . . . including documents relating to client lists . . . client preferences, contract details, expert lists and performance criteria." Specifically, she downloaded the following files: "ExpertConnect . . . capabilities," "Ruane Contract," "ExpertConnect_Renewal_Proposal," "stifel contract," "INVITE LANGUAGE," and "JMP Life Sciences Schedule."

In November 2017, Parmar informed ExpertConnect that she was resigning because of "medical issues" and because "she wanted to focus on starting a family with her new husband." Over the next 2 months, before leaving ExpertConnect, Parmar took "client contracts, usage reports, a client list, [and] expert profiles," deleted them from her ExpertConnect laptop, and attempted to wipe the laptop clean. A month after her departure from ExpertConnect, Parmar emerged as the CEO and Co-founder of Strafluence.

Plaintiff hired an expert, T&M Protection Resources, to conduct a forensic examination and analysis of Fowler and Parmar's ExpertConnect laptops. The resulting report (the "Expert Report") described evidence consistent with Fowler's having saved many of Plaintiff's documents to her desktop, and then on September 29, 2017, copying them to a USB hard drive, and then deleting them from her desktop. The Expert Report also revealed evidence consistent with Parmar's having downloaded and copied an Excel spreadsheet titled "Client List" to Google Drive (a cloud storage service) on November 28, 2017. The Complaint alleges that "Defendants Fowler's and Parmar's laptops showed widespread theft, downloading and copying, printing, transferring proprietary files to external hard drives and USB storage devices . . . prior to both of their departures from ExpertConnect."

### 4. Defendants' Use of ExpertConnect's Information

Parmar and Fowler used the information they took from ExpertConnect to develop business for Strafluence. For example, Defendants relied on the misappropriated information to determine which subject matter expert ExpertConnect had slated for a major client's project and at what price, and contacted the subject matter expert to service the client on behalf of Strafluence. ExpertConnect contacted the same subject matter expert, only to learn that the expert had already been approached by Defendants. These actions damaged ExpertConnect's relationship with the expert, and ExpertConnect lost a "major client" that it serviced annually. ExpertConnect's "brand emphasis on maintaining client confidential information and expert confidential information" was harmed when Defendants divulged confidential information during their outreach efforts to ExpertConnect's clients, and ExpertConnect has had to "field questions from experts in its network who questioned ExpertConnect's practices . . . based on information they gained from Strafluence."

## II. STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief

above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 554). On a Rule 12(b)(6) motion, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016).

In considering a motion to dismiss, courts "do not look beyond 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, [ ] . . . matters of which judicial notice may be taken,'" and other documents "'integral' to the complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)) (ellipses in original). The NDAs are considered because they are integral to the Complaint. *See id.* ("A document is integral to the complaint where the complaint relies heavily upon its terms and effect.") (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)) (internal quotation marks omitted).

Citing *DoubleLine Capital LP v. Odebrecht Fin., Ltd.*, No. 17 Civ. 4576, 2018 WL 3768037, at *26 (S.D.N.Y. Aug. 8, 2018), Defendants argue that the Expert Report and the expert's testimony during the preliminary injunction hearing can be taken into account because courts can consider "documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." As Defendants admit in their Reply Memorandum of Law, it is inappropriate to consider evidence from the preliminary injunction hearing unless it is attached to, referenced in or integral to the Complaint. *See Goel*, 820 F.3d at 559. The Complaint does not reference or rely on the expert's testimony, and it is not considered in this opinion. As the Expert Report is referenced in the Complaint, it is considered in adjudicating this motion.

## III.   DISCUSSION

### A. DTSA Claim (Count I)

To state a claim for trade secret misappropriation under the DTSA, a plaintiff must plausibly allege that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret. 18 U.S.C. §1836(b)(1). The Complaint sufficiently alleges both elements.

#### 1. Trade Secret

Under the DTSA, the term "trade secret" includes "all forms and types of financial, business, scientific, technical, economic, or engineering information" if (1) "the owner thereof has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). Although the Second Circuit has not expressly articulated a specificity requirement, district courts in this circuit routinely require that plaintiffs plead their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated. *Elsevier Inc. v. Doctor Evidence, LLC*, No. 17 Civ. 5540, 2018 WL 557906, at *4 (S.D.N.Y. Jan. 23, 2018) (collecting cases).

The Complaint sufficiently identifies the trade secrets at issue. It details numerous specific categories of information relating to ExpertConnect's service, including "client lists and client preferences, contract details, expert lists and performance criteria." The Complaint also identifies specific documents that are alleged to be trade secrets, including a PowerPoint about "ExpertConnect . . . capabilities," two client contracts, and a "Renewal . . . Proposal." These allegations give Defendants adequate notice of the trade secrets allegedly misappropriated. *Compare, e.g.*, *Tesla Wall Sys., LLC v. Related Cos., L.P.*, No. 17 Civ. 5966, 2017 WL 6507110,

at *9 (S.D.N.Y. Dec. 18, 2017) ("Tesla's complaint is highly specific regarding defendants' course of conduct [and] pleads numerous specific categories of information, such as 'technical data, internal pricing information, work product, research, engineering designs,' etc."), *with PaySys Int'l, Inc. v. Atos Se*, No. 14 Civ. 10105, 2016 WL 7116132, at *10 (S.D.N.Y. Dec. 5, 2016) (holding the complaint was insufficiently specific when the trade secrets were identified as "the Products, all Enhancements to the Products and all proprietary information, data, documentation and derivative works related to the Products").[1]

The Complaint also adequately alleges that Plaintiff took reasonable steps to protect the trade secrets, as the DTSA requires. *See* 18 U.S.C. § 1839(3). ExpertConnect required its employees to enter into NDAs, which state that employees shall make use of confidential information only "for the purpose of performing his/her duties as an employee." The trade secrets could be accessed only through "password protected entry points," and the Employee Handbook prohibited employees from "[m]isus[ing], or remov[ing] without authorization . . . client lists, expert lists, records, or confidential information of any kind." *See Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp.*, No. 15 Civ. 211, 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016) (finding that a trade secret holder took "reasonable measures to keep the information secret by making those who use it subject to confidentiality provisions and limitations, and only making it accessible through strictly controlled servers.").

---

[1] The Second Circuit has not yet addressed the DTSA in a reported opinion. As the requirements for showing a misappropriation of a trade secret under the DTSA are similar to those for misappropriation under New York law, *Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016), district courts often rely on cases discussing misappropriation under New York law to analyze DTSA claims. *See, e.g.*, *Elsevier Inc. v. Doctor Evidence, LLC*, No. 17 Civ. 5540, 2018 WL 557906, at *4 (S.D.N.Y. Jan. 23, 2018) (using cases that analyze misappropriation under New York law to determine whether the complaint stated a DTSA claim); *see also In re Document Techs. Litig.*, 275 F. Supp. 3d 454, 461–62 (S.D.N.Y. 2017); *accord Drennen*, 235 F. Supp. 3d at 565.

The Complaint plausibly pleads that the documents it alleges to be trade secrets "derive independent economic value" from being kept secret. 18 U.S.C. § 1839(3). The Complaint alleges that ExpertConnect spent "significant amounts of time and money" developing the trade secrets at issue, and that exposing them to competitors would "enable [the competitors] . . . to use ExpertConnect's own data and analysis to underprice ExpertConnect and divert customers." ExpertConnect also kept the trade secrets on a secure server to which only employees had access. As ExpertConnect's brand value depends on maintaining their clients' and experts' confidences, its reputation is harmed when the trade secrets are divulged. These allegations sufficiently plead that ExpertConnect's trade secrets are valuable in part because they are secret. *See Medidata Sols. v. Veeva Sys.*, No. 17 Civ. 589, 2018 WL 6173349, at * 4 (S.D.N.Y. Nov. 26, 2018) (the complaint plausibly alleged that the trade secrets at issue derived independent economic value from being secret when the plaintiff "spent a great deal of time and money . . . developing its technology"); *see also Gen. Sec., Inc. v. Commercial Fire & Sec., Inc.*, No. 17 Civ. 1194, 2018 WL 3118274, at *2 (E.D.N.Y. June 25, 2018) (the complaint plausibly pleaded independent economic value when the plaintiff kept the trade secrets at issue "on a secure computer accessible only to employees").

Citing *Elsevier*, 2018 WL 557906, at *5, Defendant argues that the Complaint conflates documents alleged to be trade secrets with all of ExpertConnect's "confidential and proprietary materials," and that a company's confidential information is not a protectable trade secret merely because the company has taken steps to safeguard it. However, the Complaint alleges more by describing, as required by the statute, how the alleged trade secrets generate independent economic value from being kept secret. *See* 18 U.S.C. § 1839(3) (defining trade secret as "information [that] derives independent economic value . . . from not being generally known to .

9

. . another person who can obtain economic value from the disclosure or use of the information"). Specifically, the Complaint alleges that the documents Defendants took were trade secrets not only because they were "confidential and proprietary to ExpertConnect" but also because the information could be used to "underprice ExpertConnect and divert customers," and disclosure would harm "ExpertConnect's brand emphasis on maintaining . . . confidential information." These allegations plausibly plead that the documents Defendants took "derive independent economic value" from being kept secret and are trade secrets under the DTSA.

Defendant also argues Plaintiff's customer list and pricing information are not trade secrets because the Complaint fails to allege facts that show Plaintiff's customer list is "not otherwise readily ascertainable," or that Plaintiff's pricing information "gives it a unique advantage." "The question of whether or not a customer list is a trade secret is generally a question of fact," that is not easily resolved at the motion to dismiss stage. *Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 566 (S.D.N.Y. 2016) (quoting *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 89 (2d Cir. 1991)). As the Complaint alleges that the customer list and pricing information were available to Defendants "only by virtue of their employment" with ExpertConnect and used by Defendants to underprice ExpertConnect and divert customers, the Complaint sufficiently pleads that the customer list and pricing information are trade secrets. Although the authorities on which Defendant rely require more detailed evidence, they do not involve motions to dismiss and are procedurally distinguishable. *See Drennen*, 235 F.Supp.3d at 566 (adjudicating a motion for preliminary injunction); *accord Art & Cook, Inc. v. Haber*, No. 17 Civ. 1634, 2017 WL 4443549, at *2 (E.D.N.Y. Oct. 3, 2017); *Saks v. Attachmate Corp.*, No. 14 Civ. 4902, 2015 WL 1841136, at *18 (S.D.N.Y. April 17, 2015) (adjudicating a motion for summary judgment). All that is required at the motion to dismiss stage are facts plausibly showing that what the Defendants misappropriated are trade secrets. *See Twombly*, 550 U.S. at 556. The Complaint

satisfies this standard.

## 2. Misappropriation

Under the DTSA, a complaint must plead that the defendant misappropriated a trade secret (1) by acquiring a trade secret by improper means, or (2) disclosing or using the trade secret without consent. *AUA Private Equity Partners, LLC v. Soto*, No. 17 Civ. 8035, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018) (citing 18 U.S.C. § 1839(5)). "Improper means" can involve "theft . . . [or] breach or inducement of a breach of a duty to maintain secrecy," 18 U.S.C. § 1839(6)(A), including contractual agreements not to disclose or disseminate information, *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 511 (S.D.N.Y. 2017).

The Complaint plausibly alleges that Fowler and Parmar acquired trade secrets through improper means -- specifically, by breaching their NDAs. Fowler and Parmar's NDAs state that they can use Confidential Information only "for the purpose of performing his/her duties as an employee." The Complaint plausibly alleges that Fowler and Parmar took the trade secrets for purposes unrelated to their employment at ExpertConnect by pleading that Fowler downloaded a document regarding an acquisition proposal when her role was limited to "client service[s]," and that Parmar attempted to wipe her ExpertConnect laptop clean to conceal the fact that she took files. *See, e.g., Syntel*, 2016 WL 5338550, at *6 (DTSA counterclaim was adequately pleaded when the defendants alleged that the plaintiff, "without their consent, downloaded . . . [files] from their Customer Exchange . . . and used it for . . . [their] own . . . financial gain, unrelated to its service of . . . [defendants'] clients, in breach of the MSA's prohibition on each party using the other's confidential information for its own benefit.").

The Complaint also plausibly pleads misappropriation based on the theory that Defendants disclosed and used ExpertConnect's trade secrets to solicit ExpertConnect clients without Plaintiff's consent. The Complaint alleges that Defendants used the misappropriated

11

trade secrets to contact the subject matter expert ExpertConnect had slated for its client's project and caused ExpertConnect to "lose a major client." As a result of Defendants' disclosures, ExpertConnect has had to "field questions from experts in its network who questioned ExpertConnect's practices . . . based on information they gained from Strafluence." These allegations sufficiently plead that Defendants disclosed or used the trade secrets without ExpertConnect's consent. *See, e.g., Medidata*, 2018 WL 6173349, at *4 (holding that the complaint plausibly alleged disclosure of trade secrets when investors asked the plaintiff "specific questions about its product offerings that demonstrated knowledge of confidential information" based on information the investors received from defendants).

Defendants argue that the Complaint's misappropriation claim is not plausible because the Expert Report concluded only that it was "possible" that Fowler and Parmar misappropriated confidential client files. However, the Complaint pleads other allegations, including that Defendants started their own company shortly after leaving ExpertConnect and solicited the same subject matter experts ExpertConnect had slated for projects to poach its clients. These allegations, when combined with the Expert Report, plausibly allege misappropriation.

**B.     Misappropriation of Trade Secrets under New York Law (Count II)**

To state a claim for misappropriation of trade secrets under New York law, the Complaint must plausibly allege "(1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Schroeder v. Pinterest Inc.*, 17 N.Y.S.3d 678, 690 (1st Dep't 2015) (quoting *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43-44 (2d Cir. 1999).

The requirements are similar for showing a misappropriation of a trade secret under the DTSA and misappropriation under New York common law. *See, e.g., Drennen*, 235 F. Supp. at

565. For substantially the same reasons that the Complaint sufficiently pleads a DTSA claim, the Complaint also states a claim for misappropriation of trade secrets under New York law.

### C. Breach of Duty of Fiduciary Duty and Duty of Loyalty (Count III)

Under New York law, "employees ha[ve] duties of good faith and loyalty to their employer" in the performance of the employees' duties. *Markowits v. Friedman*, 42 N.Y.S.3d 218, 221 (2d Dep't 2016). "An employee may create a competing business prior to leaving [her or] his employer without breaching any fiduciary duty unless [she or] he makes improper use of the employer's time, facilities or proprietary secrets in doing so." *Island Sports Physical Therapy v. Burns*, 923 N.Y.S.2d 156, 157 (2d Dep't 2011) (alterations in original) (quoting *Schneider Leasing Plus v. Stallone*, 569 N.Y.S.2d 126, 128 (2d Dep't 1991)). "Solicitation of an entity's customers by a former employee or independent contractor is not actionable unless . . . [there was] wrongful conduct by the employee or independent contractor, such as physically taking or copying files or using confidential information." *Id.* (quoting *Starlight Limousine Serv. v. Cucinella*, 713 N.Y.S.2d 195, 195 (2d Dep't 2000)).

The Complaint states a claim for breach of the duty of loyalty. While still employed at ExpertConnect, the Complaint alleges that Fowler formed a competing company and used "ExpertConnect equipment to prepare and/or store corporate filings" for the new company. The Complaint also alleges that Fowler and Parmar downloaded a wide range of trade secrets from ExpertConnect's database without authorization, which they later used to solicit ExpertConnect clients. These allegations sufficiently plead that Fowler and Parmar breached their duty of loyalty by making "improper use of the[ir] employer's [ ] facilities or proprietary secrets" to create a competing business while still employed at ExpertConnect. *See id.* (quoting *Stallone*, 569 N.Y.S.2d at 128; *see, e.g., Apple Mortg. Corp. v. Barenblatt*, 162 F. Supp. 3d 270, 283

13

(S.D.N.Y. 2016) (denying summary judgment on breach of duty of loyalty claim when defendants "copied files [containing confidential information] and sent files and contact information externally from their Apple computers to personal email addresses . . . while still employed at Apple").

Relying on *Grewal v. Cuneo*, No. 13 Civ. 6836, 2016 WL 308803 at *8 (S.D.N.Y. Jan. 25, 2015), and *Delville v. Firmenich Inc.*, 920 F.Supp.2d 446, 469 (S.D.N.Y. 2013), Defendants argue that the duty of loyalty claim fails because the Complaint does not allege that "Fowler or Parmar engaged in any of their allegedly wrongful conduct while holding themselves out as agents of ExpertConnect." Although *Grewal* and *Delville* state that a breach occurs when an "employee, *acting as the agent* of the employer…diverts business opportunities to himself," this language merely means that the duty of loyalty arises from an ongoing employer-employee relationship, and that defendants must have been agents or employees of the employer when they engaged in the wrongful conduct. *Grewal*, 2016 WL 308803 at *7 (emphasis added) (quoting *Farricker v. Penson Dev., Inc.*, No. 07 Civ. 11191, 2010 WL 845983, at *2 (S.D.N.Y. Mar. 4, 2010)); *Delville*, 920 F.Supp.2d at 469 (citation omitted). These decisions do not limit duty of loyalty claims to cases where the employee explicitly represents himself as the employer's agent when he diverts business opportunities to himself. *See Grewal*, 2016 WL 308803, at *7; *Delville*, 920 F. Supp. 2d at 469. As Defendants were still employed at ExpertConnect when they are alleged to have misappropriated confidential information, the Complaint sufficiently pleads a breach of the duty of loyalty claim.

### D. Breach of Contract and the Duty of Good Faith and Fair Dealing (Count IV)

The Complaint plausibly alleges that Defendants breached the NDAs. To state a claim for breach of contract under New York law, "the complaint must allege: (i) the formation of a

contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quoting *Johnson v. Nextel Commc'ns*, 660 F.3d 131, 142 (2d Cir. 2011)) (applying New York law). Defendants contest only element three -- whether Parmar and Fowler breached their NDAs.

The Complaint alleges two theories of breach: first, that Defendants breached the NDAs by failing to use "their best efforts to solicit, sell to, and service, the customers ExpertConnect assigned to them," and second, that Defendants breached the NDAs by "misappropriat[ing] ExpertConnect's confidential, proprietary, and trade secret information."

The Complaint's first theory of breach -- that Defendants failed to use their "best efforts" to service ExpertConnect clients -- fails to state a plausible claim for breach of contract. The Complaint does not identify a contractual provision that requires employees to use their "best efforts" in the NDA, nor does it contain any allegations regarding how Defendants failed to service ExpertConnect customers.

The Complaint does plausibly allege that Parmar and Fowler breached their NDAs by misappropriating confidential information. Fowler and Parmar's NDAs state that employees can use Confidential Information only "for the purpose of performing his/her duties as an employee." As discussed above, the Complaint plausibly alleges that shortly before their departures from ExpertConnect, Parmar and Fowler breached the § 4 of the NDAs by using "client lists" and "subject matter experts," both of which are listed as Confidential Information under the NDAs, to generate business for Strafluence after they were no longer employees at ExpertConnect.

To the extent the Complaint seeks to plead a claim for breach of the duty of good faith and fair dealing against Parmar and Fowler, that claim is dismissed. "New York law . . . does

15

not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002)) (ellipses in original). Plaintiff's breach of contract claim and breach of the covenant of good faith and fair dealing claim are premised on the same allegations -- that Defendants took ExpertConnect's confidential information to develop a competitor's business, rather than to perform their job functions at ExpertConnect. The Complaint's breach of the duty of good faith and fair dealing claim is dismissed as redundant.

### E. Civil Conspiracy (Count V)

"New York does not recognize civil conspiracy to commit a tort as an independent cause of action, and a cause of action alleging conspiracy to commit a tort stands or falls with the underlying tort." *Williams v. Williams*, 53 N.Y.S.3d 152, 153 (2d Dep't 2017), *leave to appeal denied*, 94 N.E.3d 489 (N.Y. 2018). To state a claim for civil conspiracy, "the plaintiff must allege a [1] cognizable tort, coupled with [2] an agreement between the conspirators regarding the tort, and [3] an overt action in furtherance of the agreement." *Faulkner v. Yonkers*, 963 N.Y.S. 2d 340, 341 (2d Dep't 2013) (quoting *Perez v. Lopez*, 948 N.Y.S.2d 312, 314 (2d Dep't 2012)).

Defendant's motion to dismiss the civil conspiracy claim relies on the dismissal of the Complaint's tort claims. However, as some of the tort claims survive, so too does the civil conspiracy claim.

### F. Tortious Interference (Count VI)

Under New York law, "[t]o prevail on a claim for tortious interference with business

16

relations," which is "also known as tortious interference with prospective economic advantage… a plaintiff must show that (1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (quoting *Catskill Dev. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008)) (internal quotations marks omitted) (applying New York law). "[T]he 'wrongful means' element sets a high bar." *Id.* at 262. It "requires a plaintiff to show…that 'the defendant's conduct . . . amount[ed] to a crime or an independent tort'" or that the "defendant engage[d] in conduct 'for the sole purpose of inflicting intentional harm on plaintiffs.'" *Id.* (first alteration in original) (quoting *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1103 (N.Y. 2004)).

The Complaint sufficiently pleads a claim for tortious interference. It alleges that Defendants solicited "a major client" that ExpertConnect "serviced annually" by using "client lists . . . client preferences [and] contract details" in ExpertConnect's database, thereby causing ExpertConnect to lose the client. The Complaint also alleges that Defendants' interference was accomplished through wrongful means -- misappropriation of Plaintiff's trade secrets, an independent tort under New York law. *See, e.g., Stapleton Studios, LLC v. New York*, 810 N.Y.S.2d 657 (1st Dep't 2006) (holding that the complaint stated a claim for tortious interference because it alleged that defendants' interference amounted to "slander and business defamation," which are independent torts). The Complaint sufficiently pleads a tortious interference claim.

### G. Unfair Competition (Count VII)

To state a claim of unfair competition, "a plaintiff must allege that a defendant [1] misappropriated plaintiff's labor, skills, expenditures or good will, and [2] displayed some

17

element of bad faith in doing so." *Schroeder*, 17 N.Y.S.3d at 693; *accord APF Mgmt. Co. v. Munn*, 56 N.Y.S.3d 514, 517 (2d Dep't 2017). "Allegations of a 'bad faith misappropriation of a commercial advantage belonging to another by exploitation of proprietary information' can give rise to a cause of action for unfair competition." *Macy's Inc. v. Martha Stewart Living Omnimedia, Inc.*, 6 N.Y.S.3d 7, 13 (1st Dep't 2015) (quoting *Out of Box Promotions, LLC v. Koschitzki*, 866 N.Y.S. 2d 677, 681 (2d Dep't 2008)). "The principle of misappropriation of another's commercial advantage is a cornerstone of the tort." *Id.* (alterations omitted) (quoting *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 422 N.E.2d 518, 522 (N.Y. 1981)).

The Complaint states an unfair competition claim. As to the first element, the Complaint alleges that ExpertConnect spent "significant amounts of time and money in developing [and] improving" the trade secrets Defendants took and that ExpertConnect took several measures, including password protection and NDAs, to keep them confidential. From these allegations, it is plausible to infer the trade secrets gave ExpertConnect a commercial advantage. The Complaint plausibly pleads that Defendants misappropriated this commercial advantage by using trade secrets to "underprice" ExpertConnect and to propose the same subject matter experts for ExpertConnect's clients when soliciting them for Strafluence. *See Beverage Mktg. USA v. S. Beach Beverage Co.*, 799 N.Y.S.2d 242, 244 (2d Dep't 2005) ("[T]he allegations that the defendants exploited proprietary information and trade secrets acquired by the defendant . . . during his employment as a vice president of the plaintiff . . . are sufficient to state a cause of action for unfair competition."). The second element, bad faith, can reasonably be inferred from the fact that Parmar and Fowler took the trade secrets in breach of their NDAs. *See Schroeder*, 17 N.Y.S.3d at 693 ("[B]ad faith can be established by a showing of . . . an abuse of a fiduciary or confidential relationship.").

18

Citing *Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612, 630 (S.D.N.Y. 2014), Defendants argue that the Complaint fails to allege how Defendants' acts of misappropriation caused ExpertConnect to lose clients because the clients could have been motivated to leave by "independent business reasons." Defendants misunderstand the principle of causation in *Ferring*. In that case, third parties stole secrets from the plaintiff, and it was unclear how the defendant contributed to the misappropriation. *See id.* Accordingly, the court held that the complaint must plead that the defendant's acts proximately caused the misappropriation, not that the misappropriation proximately caused the loss of clients. *See id.* Here, causation is clearly alleged because it was the Defendants themselves who stole trade secrets, using them to underprice ExpertConnect and damage its brand of "privacy, confidentiality and security" among its clients.

### H. Unjust Enrichment (Count VIII)

To state a claim for unjust enrichment, the plaintiff must allege "(1) the other party was enriched, (2) at that party's expense, and (3) that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered.'" *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011) (alteration in original) (quoting *Citibank, N.A. v. Walker*, 787 N.Y.S.2d 48, 49 (2d Dep't 2004)). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012).

Here, it is uncontested that Plaintiff's unjust enrichment claim arises out of the same subject matter as its breach of contract claim. *See* Pl.'s Mem. at 9 ("ExpertConnect pleads its unjust enrichment claim in the alternative."). The Complaint's breach of contract claim is premised on the allegation that Parmar and Fowler breached their NDAs by accessing

confidential information for their personal benefit -- to develop Strafluence -- rather than for their job functions at ExpertConnect. The unjust enrichment claim arises from the same alleged misconduct: that "Defendants . . . benefited from their use of ExpertConnect's trade secrets." Plaintiff's unjust enrichment claim is duplicative of the breach of contract claim, and it is dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED as to Counts I-VII, and GRANTED as to Count VIII. For clarity, Count IV is dismissed to the extent it is based breach of the implied covenant of good faith and fair dealing.

The Clerk of Court is respectfully directed to close the motion at Docket Number 57.

Dated: July 10, 2019
       New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**