**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
EXPERTCONNECT, LLC,

                Plaintiff and Counterclaim
                Defendant,


           -against-

MAYOKIA FOWLER, DIPALI PARMAR,
STRAFLUENCE, LLC,

                Defendants and Counterclaim
                Plaintiffs.
----------------------------------------------------------X

MAYOKIA FOWLER, DIPALI PARMAR,
STRAFLUENCE, LLC,

                Counterclaim Plaintiffs
                and Third Party Plaintiffs


           -against-

ERIC C. BROYLES and CHRIS G. GAUDIOSO,

                Third Party Defendants.

----------------------------------------------------------X

**DEFENDANTS' AMENDED ANSWER**
**TO AMENDED COMPLAINT**
**WITH COUNTERCLAIMS AND**
**THIRD-PARTY COMPLAINT**

18-CV-4828 (LGS) (OTW)


      Defendants MAYOKIA FOWLER, DIPALI PARMAR, AND STRAFLUENCE, LLC ("Defendants"), by and through their attorneys, The Roth Law Firm, PLLC, by way of an Answer to the Amended Complaint, respond to each numbered paragraph therein as follows:

### THE PARTIES

      1.    Defendants deny knowledge as to the truth of the allegations contained in Paragraph "1" of the Amended Complaint.

      2.    Defendants admit the allegations in Paragraph "2" of the Amended Complaint.

3.     Defendants admit the allegations in Paragraph "3" of the Amended Complaint.

4.     Defendants deny the allegations in Paragraph "4" of the Amended Complaint.

## JURISDICTION AND VENUE

5.     Defendants deny knowledge or information as to the truth of the allegations contained in Paragraph "5" of the Amended Complaint.

6.     Defendants deny the allegations in Paragraph "6" of the Amended Complaint.

7.     Defendants deny the allegations in Paragraphs "7" of the Amended Complaint.

8.     Defendants deny the allegations in Paragraph "8" of the Amended Complaint.

## FACTUAL BACKGROUND

9.     Defendants admit the allegations in Paragraph "9" of the Amended Complaint.

10.     Paragraph "10" of the Amended Complaint sets forth legal conclusions and questions of law to which no response is required.  To the extent any response is required, Defendants deny that they, in any way, acted inappropriately.

11.     Defendants admit the allegations in Paragraph "11" of the Amended Complaint only as to the existence of the referenced documents. However, with respect to all legal conclusions and questions of law, no response is required.

12.     Paragraph "12" of the Amended Complaint sets forth legal conclusions and questions of law to which no response is required. To the extent any response is required, Defendants deny that they, in any way, acted inappropriately.

### The Confidentiality Agreements

13.     Defendants deny the allegations contained in Paragraph "13" of the Amended Complaint and refer to the Court to the operative documents for their contents.

14.     Defendants deny the allegations contained in Paragraph "14" of the Amended Complaint and refer to the Court to the operative documents for their contents.

15.     Defendants deny the allegations contained in Paragraph "15" of the Amended Complaint and refer to the Court to the operative documents for their contents.

### Response To The Offer Letter

16.     Defendants deny the allegations contained in Paragraph "16" of the Amended Complaint and refer to the Court to the operative documents for their contents.

### Response To The Employee Handbook

17.     Defendants deny the allegations contained in Paragraph "17" of the Amended Complaint and refer to the Court to the operative documents for their contents.

18.     Defendants deny the allegations contained in Paragraph "18" of the Amended Complaint and refer to the Court to the operative documents for their contents.

### Response To The Confidentiality Reaffirmation

19.     Defendants deny the allegations contained in Paragraph "19" of the Amended Complaint and refer to the Court to the operative documents for their contents.

### Response To The Separation Agreement

20.     Defendants deny the allegations contained in Paragraph "20" of the Amended Complaint except admits that Fowler was informed she was being terminated and was allowed to look for another job.

### The Scheme to Form a Competing Company and Misappropriate ExpertConnect Data

21.     Defendants deny the allegations in Paragraph "21" of the Amended Complaint.

22.      Defendants deny the allegations in Paragraph "22" of the Amended Complaint.

23.      Defendants deny the allegations in Paragraph "23" of the Amended Complaint.

24.      Defendants deny the allegations in Paragraph "24" of the Amended Complaint but admit that Parmar became the CEO and Co-Founder of Strafluence.

25.      Defendants deny the allegations in Paragraph "25" of the Amended Complaint.

26.      Defendants deny the allegations in Paragraph "26" of the Amended Complaint.

27.      Defendants deny the allegations in Paragraph "27" of the Amended Complaint.

28.      Defendants lack knowledge or information sufficient to admit or deny the allegations in Paragraph "28" of the Amended Complaint.

29.      Defendants lack knowledge or information sufficient to admit or deny the allegations in Paragraph "29" of the Amended Complaint.

30.      Defendants deny the allegations in Paragraph "30" of the Amended Complaint.

31.      Defendants deny the allegations in Paragraph "31" of the Amended Complaint.

32.      Defendants deny the allegations in Paragraph "32" of the Amended Complaint.

33.      Defendants deny the allegations in Paragraph "33" of the Amended Complaint.

34.      Defendants deny the allegations in Paragraph "34" of the Amended Complaint.

35.      Defendants lack knowledge or information sufficient to admit or deny the allegations in Paragraph "35" of the Amended Complaint.

36.      Defendants deny the allegations in Paragraph "36" of the Amended Complaint.

37.      Defendants deny the allegations in Paragraph "37" of the Amended Complaint.

38.      Defendants deny the allegations in Paragraph "38" of the Amended Complaint.

39.      Defendants deny the allegations in Paragraph "39" of the Amended Complaint.

40.      Defendants deny the allegations in Paragraph "40" of the Amended Complaint.

41.   Defendants deny the allegations in Paragraph "41" of the Amended Complaint.

42.   Defendants deny the allegations in Paragraph "42" of the Amended Complaint.

43.   Defendants deny the allegations in Paragraph "43" of the Amended Complaint.

44.   Defendants deny the allegations in Paragraph "44" of the Amended Complaint.

45.   Defendants deny the allegations in Paragraph "45" of the Amended Complaint.

46.   Defendants deny the allegations in Paragraph "46" of the Amended Complaint.

47.   Defendants deny the allegations in Paragraph "47" of the Amended Complaint.

**Response To Reasonable Measures Taken to Protect ExpertConnect's Data**

48.   Defendants deny the allegations in Paragraph "48" of the Amended Complaint.

49.   Defendants deny the allegations in Paragraph "49" of the Amended Complaint.

50.   Defendants lack knowledge or information sufficient to admit or deny the allegations in Paragraph "50" of the Amended Complaint.

51.   Defendants lack knowledge or information sufficient to admit or deny the allegations in Paragraph "51" of the Amended Complaint.

52.   Defendants deny the allegations in Paragraph "52" of the Amended Complaint.

53.   Defendants deny the allegations in Paragraph "53" of the Amended Complaint.

## RESPONSE TO FIRST CAUSE OF ACTION

54.   This paragraph contains prefatory language and does not require a response. To the extent a response is required, Defendants incorporate herein their responses to Paragraph 1 – 53, above.

55.   Defendants deny the allegations in Paragraph "55" of the Amended Complaint.

56.   Defendants deny the allegations in Paragraph "56" of the Amended Complaint.

57.   Defendants deny the allegations in Paragraph "57" of the Amended Complaint.

58.     Defendants deny the allegations in Paragraph "58" of the Amended Complaint.

59.     Defendants deny the allegations in Paragraph "59" of the Amended Complaint.

60.     Defendants deny the allegations in Paragraph "60" of the Amended Complaint.

61.     Defendants deny the allegations in Paragraph "61" of the Amended Complaint.

62.     Defendants deny the allegations in Paragraph "52" of the Amended Complaint.

## RESPONSE TO SECOND CAUSE OF ACTION

63.     This paragraph contains prefatory language and does not require a response. To the extent a response is required, Defendants incorporate herein their responses to Paragraph 1 – 62, above.

64.     Defendants deny the allegations in Paragraph "64" of the Amended Complaint.

65.     Defendants deny the allegations in Paragraph "65" of the Amended Complaint.

66.     Defendants deny the allegations in Paragraph "66" of the Amended Complaint.

67.     Defendants deny the allegations in Paragraph "67" of the Amended Complaint.

68.     Defendants deny the allegations in Paragraph "68" of the Amended Complaint.

## RESPONSE TO THIRD CAUSE OF ACTION

69.     This paragraph contains prefatory language and does not require a response. To the extent a response is required, Defendants incorporate herein their responses to Paragraph 1 – 68, above.

70.     Defendants deny the allegations in Paragraph "70" of the Amended Complaint and deny any allegation or implication that Defendants engaged in any inappropriate conduct.

71.     Defendants deny the allegations in Paragraph "71" of the Amended Complaint and deny any allegation or implication that Defendants engaged in any inappropriate conduct.

72.     Defendants deny the allegations in Paragraph "72" of the Amended Complaint and deny any allegation or implication that Defendants engaged in any inappropriate conduct.

73.     Defendants deny the allegations in Paragraph "73" of the Amended Complaint.

74.     Defendants deny the allegations in Paragraph "74" of the Amended Complaint.

75.     Defendants deny the allegations in Paragraph "75" of the Amended Complaint.

76.     Defendants deny the allegations in Paragraph "76" of the Amended Complaint.

77.     Defendants deny the allegations in Paragraph "77" of the Amended Complaint.

## RESPONSE TO FOURTH CAUSE OF ACTION

78.     This paragraph contains prefatory language and does not require a response. To the extent a response is required, Defendants incorporate herein their responses to Paragraph 1-77, above.

79.     Defendants admit the allegations in Paragraph "79" of the Amended Complaint.

80.     Defendants deny the allegations in Paragraph "80" of the Amended Complaint and deny any allegation or implication that Defendants engaged in any inappropriate conduct.

81.     Defendants deny the allegations in Paragraph "81" of the Amended Complaint and deny any allegation or implication that Defendants engaged in any inappropriate conduct.

82.     Defendants deny the allegations in Paragraph "82" of the Amended Complaint.

83.     Defendants deny the allegations in Paragraph "83" of the Amended Complaint.

84.     Defendants deny the allegations in Paragraph "84" of the Amended Complaint.

85.     Defendants deny the allegations in Paragraph "85" of the Amended Complaint.

86.     Paragraph "86" of the Amended Complaint sets forth legal conclusions and questions of law to which no response is required and Defendants deny any allegation of wrongdoing.

## RESPONSE TO FIFTH CAUSE OF ACTION

87.     This paragraph contains prefatory language to which no response is required. To the extent a response is required, Defendants incorporate herein their response to Paragraph 1-86, above.

88.     Defendants deny the allegations in Paragraph "88" of the Amended Complaint.

89.     Defendants deny the allegations in Paragraph "89" of the Amended Complaint.

90.     Defendants deny the allegations in Paragraph "90" of the Amended Complaint.

91.     Defendants deny the allegations in Paragraph "91" of the Amended Complaint.

## RESPONSE TO SIXTH CAUSE OF ACTION

92.     This paragraph contains prefatory language to which no response is required. To the extent a response is required, Defendants incorporate herein their response to Paragraph 1-91, above. Further, the paragraph is improperly numbered as "91." Defendants responses continue below in accordance with the correct numbering but will retain reference to the numbering in the Amended Complaint to avoid confusion.

93.     Defendants deny the allegations in mislabeled Paragraph "92" of the Amended Complaint.

94.     Defendants deny the allegations in mislabeled Paragraph "93" of the Amended Complaint.

95.     Defendants deny the allegations in mislabeled Paragraph "94" of the Amended Complaint.

96.     Defendants deny the allegations in mislabeled Paragraph "95" of the Amended Complaint.

97.     Defendants deny the allegations in mislabeled Paragraph "96" of the Amended Complaint.

98.     Defendants deny the allegations in mislabeled Paragraph "97" of the Amended Complaint.

## RESPONSE TO SEVENTH CAUSE OF ACTION

99.     This paragraph contains prefatory language to which no response is required. To the extent a response is required, Defendants incorporate herein their response to Paragraph 1-98, above. Further, the paragraph is improperly numbered as "98." Defendants responses continue below in accordance with the correct numbering but will retain reference to the numbering in the Amended Complaint to avoid confusion.

100.    Defendants deny the allegations in mislabeled Paragraph "99" of the Amended Complaint.

101.    Defendants deny the allegations in mislabeled Paragraph "100" of the Amended Complaint.

102.    Defendants deny the allegations in mislabeled Paragraph "101" of the Amended Complaint.

## RESPONSE TO EIGHTH CAUSE OF ACTION

103.    This paragraph contains prefatory language to which no response is required. To the extent a response is required, Defendants incorporate herein their response to Paragraph 1-98, above. Further, the paragraph is improperly numbered as "102." Defendants responses continue below in accordance with the correct numbering but will retain reference to the numbering in the Amended Complaint to avoid confusion.

104.    Defendants deny the allegations in mislabeled Paragraph "103" of the Amended Complaint.

105.    Defendants deny the allegations in mislabeled Paragraph "104" of the Amended Complaint.

106.    Defendants deny the allegations in mislabeled Paragraph "105" of the Amended Complaint.

## PRAYER FOR RELIEF

The remainder of the Amended Complaint constitutes Plaintiff's request for relief to which no response is required. To the extent a response is required, Defendants deny that Plaintiff is entitled to any of the relief sought. Plaintiff's claims should be dismissed in their entirety and Defendants should be awarded costs, attorney's fees, and all such further relief as is appropriate and just.

## FIRST AFFIRMATIVE DEFENSE

The Amended Complaint fails to state any cause of action for which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

None of the information alleged in the Amended Complaint to have been misappropriated constitutes a legally protectable trade secret or confidential information.

## THIRD AFFIRMATIVE DEFENSE

The claims set forth in the Amended Complaint fail, in whole or in part, because none of the information accessed, viewed, used, or transferred by Defendants, which conduct is denied, contain any confidential, proprietary, or trade secret information.

## FOURTH AFFIRMATIVE DEFENSE

The claims set forth in the Amended Complaint fail, in whole or in part, because none of the information allegedly misappropriated has been used by Defendants.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to a recovery on any of its claims since it has not sustained any legally cognizable damages.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff claims for damages are barred or subject to reduction due to its failure to mitigate.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to injunctive relief since the scope of protection for any alleged trade secrets at issue is limited by the parties' contractual agreements.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to injunctive relief because of the availability of adequate monetary remedies at law.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to damages, costs, punitive damages, or attorney's fees.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's misappropriation claims have been made in bad faith and therefore Plaintiff is liable to Defendants for attorney's fees incurred by Defendants as provided for under § 1836(b)(3)(D) of the Defend Trade Secrets Act ("DTSA").

## DEFENDANTS' DEMAND FOR JURY TRIAL

Defendants demand a trial by jury with respect to all issues so triable.

## COUNTERCLAIMS AND THIRD-PARTY CLAIMS

Defendants-Counterclaim Plaintiffs/Third-Party Plaintiffs Mayokia Fowler ("Fowler"), Dipali Parmar ("Parmar"), and Strafluence, LLC ("Strafluence") (collectively "Defendants-Counterclaim Plaintiffs/Third Party Plaintiffs") hereby assert counterclaims against Plaintiff-Counterclaim Defendant ExpertConnect, LLC ("ExpertConnect") and third-party claims against its Chief Executive Officer, Third-Party Defendant Eric C. Broyles ("Broyles"), and its Managing Partner, Third-Party Party Defendant Chris Gaudioso ("Gaudioso"), and allege as follows:

### Nature of the Counterclaims/Third Party Claims and Jurisdiction

1.     Fowler, Parmar, and Strafluence, LLC hereby assert counterclaims against Plaintiff-Counterclaim Defendant ExpertConnect, LLC and third-party claims against Third-Party

Defendants Eric C. Broyles and Chris Gaudioso, under New York State Law for tortious interference with prospective contractual relations, defamation *per se*, and breach of contract.

2.      This Court has subject matter jurisdiction over all state law counterclaims and third-party claims asserted herein pursuant to 28 U.S.C. § 1367(a).

## PARTIES

3.      Defendant-Counterclaim Plaintiff/Third Party Plaintiff Mayokia Fowler is a Texas resident.

4.      Defendant-Counterclaim Plaintiff/Third Party Plaintiff Dipali Parmar is a Washington resident.

5.      Defendant-Counterclaim Plaintiff/Third Party Plaintiff Strafluence is a Texas company.

6.      Plaintiff-Counterclaim Defendant ExpertConnect, LLC is a Delaware company with its headquarters located at West 37th Street, Suite 801, New York, NY 10018.

7.      Third Party Defendant Eric C. Broyles is a resident of Washington, D.C.

8.      Third Party Defendant Chris G. Gaudioso is a New York resident.

## FIRST CAUSE OF ACTION

Tortious Interference with Prospective Contractual Relations
(As Against Counterclaim Defendant ExpertConnect Third-Party Defendant Broyles)

1.      On or about May 3, 2018 and May 7, 2018, prior to the commencement of this action, ExpertConnect's CEO, Eric C. Broyles, sent two e-mail communication to representatives from JMP Securities, LLC ("JMP") falsely accusing Fowler and Parmar of engaging in "widespread theft" of ExpertConnect's "trade secrets." **Exhibit A**. JMP was a former client of ExpertConnect.

2.      Specifically, in the May 3, 2018 e-mail communication, Broyles falsely claimed that ExpertConnect had engaged a former federal prosecutor to assess Fowler and Parmar's alleged conduct for "criminality," thus actively signaling to JMP and its representatives that Fowler and Parmar had engaged, and were continuing to engage, in criminally sanctionable conduct. Indeed, contrary to these false representations, there has never been any criminal investigation or proceeding initiated against Fowler or Parmar in connection with the alleged theft of ExpertConnect's trade secrets. Neither Broyles nor ExpertConnect ever hired a former prosecutor to investigate any allegedly "criminal" conduct on the part of Fowler or Parmar.

3.      Critically, at the time that Broyles' sent the e-mail communications to JMP, Fowler and Parmar were in the process of negotiating an active contract to provide JMP with expert referral services. Upon information and belief, Broyles knew that Fowler and Parmar, through their company Strafluence, LLC, were in the process of negotiating a contract for services with JMP Securities.

4.      By its own terms, the May 3, 2018 e-mail to JMP was not sent as an attempt to preserve JMP's business relations with ExpertConnect (since JMP was not a client), or to apprise JMP of any improprieties with respect to any of *its* confidential information (the e-mail, in fact, does not identify any compromised information at all) but, rather, as an unsolicited "FYI" ("For Your Information"). The e-mail curiously refers to "other evidence" implicating Fowler and Parmar in "criminal" conduct but, in an omission belying the false nature of the assertion, fails to identify what that "other evidence" is. In short, the e-mail was nothing more than a vehicle to disseminate the false message that Fowler and Parmar were criminals under active investigation.

5.      Broyles' May 7, 2019 e-mail to JMP, moreover, falsely stated that ExpertConnect had, *at that time*, already commenced civil litigation against Fowler and Parmar. Broyles falsely

stated to JMP that "[w]e are in litigation *now*," that the pending litigation would "impact meetings or projects that may be scheduled" for JMP, and that any experts "scheduled from [ExpertConnect's] database" would be blocked from performing any work for JMP. All of these assertions, at the time they were made, were completely false.

6.      As a matter of indisputable fact, the instant litigation was not commenced by ExpertConnect until May 31, 2018, and no injunction was entered until months later, on or about July 28, 2018. *See* ECF Docket No.: 43. Further, Broyles confirms in his May 7, 2019 e-mail that its purpose was to reach out "to clients that we know [Fowler and Parmar] worked with while employed with ExpertConnect and have likely contacted[.]" Clearly, then, Broyles was deliberately targeting *prospective clients* of Fowler, Parmar, and Strafluence with disinformation, not seeking to protect business any legitimate relations with existing clients.

7.      Read together and in their proper context, it is clear from the e-mails that Broyles was not merely reaching out to JMP as a precaution, or to warn them about prospective litigation (JMP is not, and never has been, a party to this lawsuit), but – instead – to falsely accuse Fowler and Parmar of engaging in criminal conduct, to lie about a then non-existent lawsuit, and to exaggerate the impact of a non-existent injunction.  At no point did Broyles identify any experts, or any information allegedly misappropriated that would have had any impact on any of JMP's business dealings with Fowler, Parmar, or Strafluence. The e-mails, like this entire litigation, were but one part of a malicious, vindictive, and preemptive campaign against former employees with whom Broyles knew his company could not compete.

8.      Subsequently, in the month following the e-mail communications to JMP, Broyles contacted representatives from JMP by phone and, taking things a step further, actively counseled JMP to cease engaging in any further communications or business relations with Fowler, Parmar,

and Strafluence. Upon information and belief, during these phone conversations, which took place at various points between early May and early June 2018, Broyles reiterated the false accusations as contained in his prior e-mails, including accusations that Fowler and Parmar were being actively investigated for their allegedly "criminal" conduct.

9.      Sure enough, shortly after the dissemination of Broyles' false and disparaging communications, both by e-mail and by telephone, representatives from JMP contacted Fowler and Parmar and informed them that, at the direct urging of ExpertConnect, they would be terminating all present and future business relationships with Strafluence, LLC. And, in fact, this is exactly what happened. JMP withdrew from negotiations and never signed a contract with Strafluence.

10.      As a direct result of Broyles' false accusations of criminality, misrepresentations as to legal proceedings, and affirmative urging that JMP cease engaging in all business transactions with Strafluence, Fowler and Parmar lost a valuable contract with a client that they were on the verge of signing.

11.      At the time Broyles made his statements to JMP, it was not a client of ExpertConnect. The relationship between JMP and Strafluence had been terminated months earlier. Broyles made the statements to JMP, therefore, with the sole intent to harm Strafluence and its principals since JMP had already made it clear to Broyles that it would not do business with ExpertConnect.

12.      The statements made by Broyles were defamatory, false, made solely out of malice, and were intended to disrupt the business dealings between Fowler, Parmar, and Strafluence and JMP.

13.     As a result of these actions, Fowler, Parmar, and Strafluence have incurred monetary damages, as well as damage to their goodwill, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

Defamation *Per Se*
(As Against Third-Party Defendants Broyles and Gaudioso)

14.     Defendants-Counterclaim Plaintiffs/Third-Party Plaintiffs incorporate herein and reiterate all of the allegations set forth in Paragraph 1-13, above.

15.     In his May 3, 2018 and May 7, 2018 e-mail communications to representatives of JMP Securities, Broyles falsely accused Fowler and Parmar of engaging in serious criminal conduct, among other false statements intended to impugn their business reputations. Broyles specifically stated that, as a result of their alleged actions, ExpertConnect "engaged a former Federal Prosecutor to assess potential criminality based upon other evidence that was uncovered of very brazen acts by these former employees" when, in fact, there was never an investigation, there was never an investigator, and there was no crime to investigate.

16.     The statements by Broyles concerning the criminal conduct of Fowler and Parmar were false and uttered with no purpose other than to cause reputational harm.

17.     Indeed, Broyles repeated these false claims of criminality to other business entities and prospective clients despite knowing that there was no factual or legal basis for any sort of investigation.

18.     On May 2, 2018 Mr. Broyles sent a nearly identical e-mail to Evercore ISI ("Evercore") as he did to JMP, wherein he again repeated the false canard that, as a result of the actions of Fowler and Parmar, ExpertConnect "engaged a former US Attorney to assess for criminality based upon other evidence we uncovered." **Exhibit B**. Like JMP, Evercore was not, at

the time of the communications, a client of ExpertConnect – a fact that Broyles concedes in the body of his May 2, 2018 e-mail.

19.     In a subsequent May 4, 2018 response e-mail, a representative from Evercore confirmed to Broyles that, in fact, Evercore never conducted *any* business with Strafluence. **Exhibit C**. Thus, not only had ExpertConnect and Broyles deliberately defamed Parmar, Fowler, and Strafluence in an attempt to ruin their reputation and relationships with third-party clients (such as JMP and Evercore) they knew full well, prior to the commencement of the instant litigation, that Evercore's business was never unlawfully diverted.[1]

20.     Additionally, on May 3, 2018, another ExpertConnect employee, Managing Partner Chris Gaudioso, sent a similar e-mail to representatives of Ruane Cunniff & Goldfarb, Inc. ("Ruane"), at the time an active client of Strafluence, falsely claiming yet again that ExpertConnect had "engaged a former US Attorney to assess potential criminality based upon other evidence that was uncovered." **Exhibit D**.

21.     As can be seen from this series of e-mails, whose dissemination was deliberately orchestrated with full knowledge of their falsity, Broyles and Gaudioso engaged in a concerted effort to deliberately disparage the business reputations of Fowler, Parmar, and Strafluence with false statements concerning their "criminal" conduct.

22.     The import of these e-mails and communications could not have been clearer. The false message intended to be conveyed to actual and prospective clients was that Fowler and Parmar had engaged, and were continuing to engage (1) in criminal conduct, (2) that a criminal

---

[1].     ExpertConnect has – to this day – refused to withdraw its patently frivolous claim for damages against Fowler, Parmar, and Strafluence stemming from the alleged diversion of Evercore's business. Despite firsthand confirmation from Evercore that it was not doing business with Strafluence, ExpertConnect nonetheless persists in its futile bid to have Fowler, Parmar, and Strafluence pay for the loss of a client; a loss that they clearly had nothing to do with.

investigation was underway or would shortly be commenced and that, therefore, (3) the clients should not engage in any business transactions with Strafluence.

23.     Not only were these statements completely false, they were unprivileged and not made in connection with any legitimate legal proceeding. There has never been any criminal action commenced against Fowler or Parmar, no investigation of any sort and, to be sure, no allegations of criminal conduct asserted in connection with this decidedly *civil* litigation.

24.     The false statements by Broyles and Gaudioso charged Fowler, Parmar, and Strafluence with having committed serious crimes and, additionally, had the tendency to injure them in their trade, business, and profession. This constitutes defamation *per se*.

25.     Worse, Fowler and Parmar were not even aware of these defamatory communications until ExpertConnect finally disclosed them throughout the course of discovery in this action on June 7, 2019.

26.     ExpertConnect had actively concealed these communications by repeatedly refusing to disclose them to Fowler and Parmar despite several discovery orders from this very court mandating their production. Fowler and Parmar had no way of knowing and could not have discovered the existence of these false statements due to ExpertConnect's deliberate concealment of the e-mail communications. Given the defamatory content of the e-mails and the false accusations of criminality contained therein, it is now abundantly clear why ExpertConnect refused to produce these documents for so long.

27.     Upon information and belief, Broyles and Gaudioso communicated with JMP, Evercore, and Ruane, among other business entities, by phone on multiple occasions and used these conversations as opportunities to repeat their false accusations of criminality and, indeed, to urge these entities not to conduct business with Strafluence.

28.     Therefore, as a direct result of these defamatory statements, Fowler, Parmar, and Strafluence have been sustained serious reputational injury in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

Breach of Contract
(As Against Counterclaim Defendant ExpertConnect, LLC)

29.     Defendants-Counterclaim Plaintiffs/Third-Party Plaintiffs incorporate herein and reiterate all of the allegations set forth in Paragraphs 1-28, above.

30.     On or about September 29, 2017, Fowler entered into a Separation Agreement with ExpertConnect. *See* ECF Docket No.: 9-7. Section 11 of the Separation Agreement contains a covenant between Fowler and ExpertConnect of "Mutual Non-Disparagement."

31.     Pursuant to that section, ExpertConnect agreed to "cause its senior management not to issue, authorize or condone any disparaging comments or statements about [Fowler] in any manner likely to be harmful to [Fowler] or [Fowler's] business, professional or personal reputation."

32.     Despite this clear agreement, Eric Broyles, ExpertConnect's CEO, as well as ExpertConnect's Managing Partner, Chris Gaudioso, engaged in a concerted campaign to disparage not only Fowler, but also her company, Strafluence, LLC.

33.     As alleged above, ExpertConnect and its senior officers disseminated clearly damaging e-mail communications and made false oral statements through telephone communications directly imputing criminality to Fowler and Strafluence. These statements were intended to cause, and did cause, serious reputational injury.

34.     ExpertConnect's officers – Broyles and Gaudioso – engaged in this conduct despite knowing full-well that they were prohibited from doing so under the terms of the Separation Agreement. A duty of non-disparagement under the Separation Agreement was owed to Fowler

20

and her business, Strafluence. Knowing that they had no lawful recourse, in the absence of a non-competition agreement, to stop Fowler and her business from besting them in the open market, Broyles and Gaudioso decided to knowingly disparage Fowler and Strafluence with false accusations of criminal conduct.

35.     As such, ExpertConnect's breach of the Separation Agreement was deliberate, in bad faith, and engaged in with the purpose of impeding Fowler ability to conduct business under the auspices of Strafluence, LLC. As a direct result of ExpertConnect's breach, Fowler and Strafluence have sustained damages in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL
## ON COUNTERCLAIMS AND THIRD-PARTY CLAIMS

Defendants-Counterclaim Plaintiffs/Third-Party Plaintiffs demand a trial by jury with respect to all issues so triable in connection with the herein stated causes of action.

## PRAYER FOR RELIEF

**WHEREFORE**, Defendants-Counterclaim Plaintiffs/Third-Party Plaintiffs request that judgment be entered against Plaintiff-Counterclaim Defendant ExpertConnect and Third-Party Defendants Broyles and Gaudioso, for each cause of action set forth herein and, further, that:

1.     Fowler, Parmar, and Strafluence be awarded monetary damages in an amount to be determined at trial;

2.     Costs, attorney's fees, and punitive damages, and

3.     Any such other and further relief as may be deemed equitable and just.

Dated:  New York, New York
        September 19, 2019

**THE ROTH LAW FIRM, PLLC**

By:

Richard A. Roth, Esq.
295 Madison Avenue, Floor 22
New York, New York 10017
Tel. No.: (212) 542 – 8882
Fax No.: (212) 542 – 8883