UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------- X
                                                                                :
EXPERTCONNECT, LLC,                                                             :
                              Plaintiff & Counterclaim                          :
                              Defendant,                                        :
                                                                                :
          -against-                                                             :
                                                                                :
MAYOKIA FOWLER, et al.,                                                         :
                              Defendants & Counterclaim                         :
                              Plaintiffs.                                       :    18 Civ. 4828 (LGS)
------------------------------------------------------------------------------- :
                                                                                :    **OPINION AND**
MAYOKIA FOWLER, et al.,                                                         :    **ORDER**
                              Third-Party Plaintiffs                            :
                                                                                :
          -against-                                                             :
                                                                                :
ERIC C. BROYLES, et al.                                                         :
                              Third-Party Defendants.                           :
------------------------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Plaintiff and Counterclaim Defendant ExpertConnect, LLC ("ExpertConnect") has sued Mayokia Fowler, Dipali Parmar and Strafluence, LLC ("Strafluence"), for violating the Defend Trade Secrets Act and various state laws. Defendants' Amended Answer to Amended Complaint with Counterclaims and Third-Party Complaint ("Amended Answer") asserts the following counterclaims against ExpertConnect and third-party claims against Eric C. Broyles and Chris G. Gaudioso -- tortious interference with prospective contractual relations against Broyles and ExpertConnect, defamation per se against Broyles and Gaudioso and breach of contract against ExpertConnect, all under New York law. Broyles, Gaudioso and ExpertConnect move to dismiss. For the reasons below, the motion is granted in part and denied in part.

## I.     BACKGROUND

The following facts are taken from the Amended Answer and documents attached to the Amended Answer. The facts are assumed to be true for purposes of this motion. *See Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019).

Fowler and Parmar were ExpertConnect employees before forming Strafluence. In September 2017, Fowler entered into a Separation Agreement with ExpertConnect. The agreement contains a "Mutual Nondisparagement" provision, which states that ExpertConnect agrees to "cause its senior management not to issue, authorize or condone any disparaging comments or statements about [Fowler] in any manner likely to be harmful to [Fowler] or [Fowler's] business, professional or personal reputation." Fowler and Parmar formed Strafluence in late 2017 after leaving ExpertConnect.

In early May 2018, Broyles, ExpertConnect's Chief Executive Officer, sent emails to former ExpertConnect clients JMP Securities, LLC and Evercore ISI. Broyles knew when sending these emails that JMP was negotiating a contract with Strafluence. At the same time, Gaudioso, ExpertConnect's Managing Partner, also sent an email to former client Ruane Cunniff & Goldfarb, Inc. The emails that Broyles and Gaudioso sent contained allegedly false and misleading information about Fowler, Parmar and Strafluence.

The three emails contain substantially the same content. Each states that ExpertConnect has learned through clients or experts "critical information about two . . . former employees who have launched a competitive firm." The critical information is that the former employees have stolen ExpertConnect's confidential and proprietary information and have committed trade secret theft, that they are using this material to service clients and that they used ExpertConnect resources to form their company. Due to this conduct, the emails state that ExpertConnect is

2

"pursuing legal remedies against [the former employees] including injunctive relief." The emails explain that "[t]he forensic team we hired (including former FBI agents) found extensive and irrefutable evidence of trade secret theft and breach of . . . contractual obligations." The emails also state that ExpertConnect engaged a former federal prosecutor "to assess potential criminality based upon other evidence" that was uncovered. Finally, the emails all conclude that "[w]e felt it important to share this information just as an FYI."

Following his initial email, Broyles revealed to Evercore that the former employees were Parmar and Fowler and that their firm is Strafluence. In early May, Broyles sent a second email to JMP, stating that ExpertConnect is "in litigation now and expect[s] to have an injunction in place very soon to prohibit the use of our stolen proprietary information." The second email then states, "We understand this may impact meetings or projects that may be scheduled so we are reaching out to ExpertConnect clients that we know these two former employees worked with while employed with ExpertConnect and have likely contacted in order to give them a heads up on this legal matter." JMP chose not to complete its negotiations with Strafluence due to Broyles' communications, allegedly resulting in Strafluence's loss of a valuable contract. Broyles and Gaudioso repeated these false statements on the telephone to representatives of JMP, Evercore, Ruane and other unidentified businesses.

On May 31, 2018, over three weeks after Broyles' second email to JMP, ExpertConnect commenced the instant litigation. The Court entered an injunction on July 26, 2018, prohibiting Strafluence from completing certain commercial transactions related to ExpertConnect clients. The emails sent by Broyles and Gaudioso were produced through discovery as part of this matter.

3

## II.  STANDARD

A motion to dismiss counterclaims and third-party claims is evaluated under the same standard as a motion to dismiss a complaint. To survive a motion to dismiss under Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the [pleading] must "nudge[]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the [party] must provide the grounds upon which his claims rest through factual allegations sufficient to raise a right to relief above the speculative level." *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016). On a 12(b)(6) motion, all inferences are drawn in non-movants' favor. *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016).

## III.  DISCUSSION

### A.  Defamation Per Se

The Amended Answer alleges that Broyles and Gaudioso committed defamation per se due to the statements they made in correspondence with JMP, Evercore, Ruane and other businesses, implying that Fowler and Parmar had engaged in criminal conduct. The defamation per se claim survives solely with respect to the defamatory statements made in email correspondence.

"New York law allows a plaintiff to recover for defamation by proving that the defendant published to a third party a defamatory statement of fact that was false, was made with the

4

applicable level of fault, and either was defamatory per se or caused the plaintiff special harm, so long as the statement was not protected by privilege." *Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011); *accord Rodriguez v. Daily News, L.P.*, 37 N.Y.S.3d 613, 614 (2d Dep't 2016). Third-Party Defendants seek dismissal of the defamation claim solely on the basis that the statements at issue are protected by the common interest privilege and the litigation privilege.

### 1. The Common Interest Privilege

The common interest privilege does not require dismissal of the defamation per se claim at this stage of the proceedings. Under New York law, "communication[s] made by one person to another upon a subject in which both have an interest" are subject to a "qualified privilege," known as the common interest privilege. *Liberman v. Gelstein*, 605 N.E.2d 344, 349 (N.Y. 1992); *accord Kuczinski v. City of New York*, 352 F. Supp. 3d 314, 325 (S.D.N.Y. 2019) (applying New York law); *see also Boyd v. Nationwide Mut. Ins. Co.*, 208 F.3d 406, 409-10 (2d Cir. 2000) ("[G]ood faith communications of a party having an interest in the subject, or a moral or societal duty to speak, are protected by a qualified privilege if made to a party having a corresponding interest or duty"). "The rationale for applying the [common interest] privilege in these circumstances is that so long as the privilege is not abused, the flow of information between persons sharing a common interest should not be impeded." *Lieberman*, 605 N.E.2d at 349.

"The privilege does not apply if the plaintiff can demonstrate that the communication was not made in good faith, but was motivated solely by malice, meaning in this context, 'spite or a knowing or reckless disregard of the statement's falsity.'" *Udeogalanya v. Kiho*, 94 N.Y.S.3d 367, 370 (2d Dep't 2019) (quoting *Franco Belli Plumbing & Heating & Sons, Inc. v. Dimino*, 164 A.D.3d 1309, 1311-12 (2d Dep't 2018)). The Second Circuit has cautioned that the

5

common interest privilege is better considered on a motion for summary judgment than a Rule 12 motion. *See Boyd*, 208 F.3d at 410-11; *accord Conti v. Doe*, No. 17 Civ. 9268, 2019 WL 952281, at *9 (S.D.N.Y. Feb. 27, 2019).

The common interest privilege does not warrant dismissal of the defamation claim here because the Amended Answer sufficiently alleges that the defamatory statements were made with malice, *i.e.*, knowing or reckless disregard of the statements' falsity: "Broyles and Gaudioso engaged in a concerted effort to deliberately disparage the business reputations of Fowler, Parmar, and Strafluence with false statements" that they had committed a serious crime and were under investigation. These statements were made "with full knowledge of their falsity" because "[t]here has never been any criminal action commenced against Fowler or Parmar, no investigation of any sort and, to be sure, no allegations of criminal conduct." Drawing all inferences in favor of the non-moving party, these allegations are not merely conclusory and are sufficient to survive a motion to dismiss.

Movants argue that the allegations of malice are insufficient because the Amended Answer does not allege that the communications were motivated solely by malice. This argument is legally incorrect. As noted above, there are two types of malice that defeat the common interest privilege -- spite (which is known as common-law malice) and knowing or reckless disregard for the truth (which is known as "actual" malice). *Chandok*, 632 F.3d at 815 (construing New York law); *Bah v. Apple, Inc.*, No. 19 Civ. 3539, 2020 WL 614932, at *10 (S.D.N.Y. Feb. 10, 2020) (construing New York law and stating that "overcoming a qualified privilege requires a showing either of 'actual' malice (i.e., knowledge of the statement's falsity or reckless disregard as to whether it was false) or of common-law malice") (quotation marks omitted). A plaintiff is required to show that malice is the sole motive only with respect to

6

common-law malice, which is not the type of malice alleged here. *See Liberman*, 605 N.E.2d at 439 (stating that a triable issue is raised only if a jury could reasonably conclude that the common-law definition of "malice was the one and only cause for the publication") (quotation marks omitted); *accord Chandok*, 632 F.3d at 815. The Amended Complaint alleges facts to show "actual" malice, which as pleaded is enough to survive dismissal. *Chandok*, 632 F.3d at 815.

Finally, movants identify features of the email correspondence that suggest they were not disseminated with malice. They note that the emails were sent solely to the recipients and not a wide audience, and they note that the emails omitted Third-Party Plaintiffs' names. These arguments are aimed to rebut an inference of common law malice, but as explained above, they miss the mark because the Complaint does not allege common law malice, but instead alleges "actual" malice.

### 2. The Litigation Privilege

The litigation privilege is inapplicable and does not require dismissal of the defamation claim. "[A]bsolute immunity from liability for defamation exists for oral or written statements made by attorneys in connection with a proceeding before a court 'when such words and writings are material and pertinent to the questions involved.'" *Front, Inc. v. Khalil*, 28 N.E.3d 15, 18 (N.Y. 2015) (quoting *Youmans v. Smith*, 47 N.E. 265, 266 (N.Y. 1897)); *accord Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 692 (S.D.N.Y. 2019). The privilege applies to statements made in the course of litigation and "prior to the commencement of an anticipated litigation" though it can be "lost where a [party] proves that the statements were not pertinent to a good faith anticipated litigation." *Front, Inc.*, 28 N.E.3d at 20. The litigation privilege does not apply to any of the alleged defamatory statements in this case because Broyles

and Gaudioso did not make these communications while acting as attorneys in connection with a proceeding before a court.

### 3. Separate Defamation Per Se Allegations

Separately, the Amended Answer alleges that Broyles and Gaudioso made the same defamatory statements to JMP, Evercore, Ruane and "other business entities" by phone on multiple occasions. For the reasons above, these claims are not subject to dismissal based on the common interest or litigation privilege.

However, the Amended Answer offers no factual allegations to support the assertion that Broyles or Gaudioso further communicated the defamatory statements to JMP, Evercore, Ruane or other businesses. The Amended Answer does not allege to whom the defamatory statements were made, when, how, or even why one might plausibly believe they were made. As conclusory assertions are not actionable, the defamation claim is limited to the alleged defamatory statements made to JMP, Evercore and Ruane by email. *See, e.g.*, *Mirage Entm't, Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 38 (S.D.N.Y. 2018) (dismissing a defamation claim as conclusory when it was "devoid of underlying facts").

### B. Tortious Interference with Prospective Contract Relations

The Amended Answer alleges that Broyles and ExpertConnect tortuously interfered with Strafluence's prospective contract relations with JMP. This claim survives except as to Broyles' liability for statements to JMP regarding possible criminal conduct by Fowler and Parmar, which are the subject of the defamation claim.

Under New York law, "[t]o prevail on a claim for . . . tortious interference with prospective economic advantage . . . a plaintiff must show that (1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the

8

defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (internal citation and quotation marks omitted) (construing New York law).  A tortious interference claim that is "premised on identical underlying factual content" as a defamation claim will be dismissed as duplicative. *Goldman v. Barrett*, 733 F. App'x 568, 571 (2d Cir. 2018) (summary order); *see, e.g.*, *Kall v. Peekskill City Sch. Dist.*, No. 18 Civ. 10199, 2020 WL 2555256, at *11 (S.D.N.Y. May 19, 2020) (dismissing tortious interference claims as duplicative of defamation claims where the alleged wrongful actions and injuries were the same); *see also Ripka v. County of Madison*, 80 N.Y.S.3d 479, 482 (3d Dep't 2018) (dismissing a tortious interference claim because it is "based on the same substantive facts pleaded with respect to [the plaintiff's] defamation cause of action").

Movants argue that this claim must be dismissed because it is duplicative of the defamation claim.  To the extent that the claim is brought against Broyles based on his statement to JMP that ExpertConnect had engaged a former federal prosecutor to assess Fowler and Parmar's conduct for criminality, the claim for tortious interference is duplicative of the defamation claim and is dismissed.[1]  *See Goldman*, 733 F. App'x at 571.

The Amended Answer also alleges that Broyles and ExpertConnect tortuously interfered with Strafluence's contract negotiations by making false statements to JMP about civil litigation -- stating on May 7, 2018,[2] that "we are in litigation now," that the pending litigation would

---

[1] The defamation claim is asserted only against Broyles and Gaudioso.  The tortious interference claim is asserted against Broyles and ExpertConnect.  Therefore, the tortious interference claim is not duplicative of the defamation claim with regard to ExpertConnect.

[2] Although the Amended Complaint at times asserts that the date is May 7, 2019, and at other times May 7, 2018, the email itself is appended as Exhibit A to the Amended Complaint, and is dated May 7, 2018.

9

"impact meetings or projects that may be scheduled" for JMP and that any experts "scheduled from [ExpertConnect's] database" would be blocked from performing any work for JMP. As these allegations are not the factual basis for the defamation claim, the tortious interference claim survives dismissal to the extent that it is based on these alleged facts.

Movants also argue that the tortious interference claim is barred by the common interest and litigation privileges. These arguments are legally incorrect. The common interest privilege applies only to defamation claims. *See Liberman*, 605 N.E.2d at 349. The cases that movants cite do not prove otherwise. *Chutko v. Ben-Ami*, 55 N.Y.S.3d 203 (1st Dep't 2017), says nothing about the common interest privilege. In *Curren v. Carbonic Sys., Inc.*, 872 N.Y.S.2d 240 (3d Dep't 2009), the court held that the common interest privilege protected statements that a company's president allegedly made to her employees about the plaintiff after he was terminated. *Id*. at 242. Rather than permitting the tortious interference claim to survive on the same basis, the tortious interference claim was dismissed as "merely a repetition" of the defamation claim. *Id*. at 244.

Even if the common interest privilege were grounds to dismiss a claim of tortious interference, it would not apply here because the Amended Complaint sufficiently alleges common law malice, *i.e.*, a knowing or reckless disregard for the truth, a concept discussed above. *See Chandok*, 632 F.3d at 815. The Amended Complaint alleges defamatory statements to JMP that litigation was ongoing as of May 7, 2018, and that an injunction was imminent. The Amended Complaint also alleges that, in fact, this litigation was not commenced until May 31, 2018, and the injunction was not entered until July 28, 2018. The allegations are sufficient to draw the inference that Defendants Broyles and ExpertConnect made the statements with knowledge that they were false.

While the litigation privilege can bar a tortious interference claim, *see Front, Inc.*, 28 N.E.3d at 18, the litigation privilege is inapplicable here because the alleged statements were not made by a person acting as an attorney.

### C. Breach of Contract

The Amended Complaint alleges that ExpertConnect breached the non-disparagement clause in Fowler's Separation Agreement, causing both Fowler and Strafluence damages. Contrary to movants' argument, Strafluence has standing to sue as a beneficiary of the Separation Agreement.

"A third party may sue as a beneficiary on a contract made for its benefit. However, an intent to benefit the third party must be shown, and, absent such intent, the third party is merely an incidental beneficiary with no right to enforce the particular contracts." *Dormitory Auth. v. Samson Constr. Co.*, 94 N.E.3d 456, 459 (N.Y. 2018) (quotation marks omitted). A third party may enforce a contract when it "is the only one who could recover for the breach of contract or when it is otherwise clear from the language of the contract that there was an intent to permit enforcement by the third party." *Id*. (quotation marks omitted). Express language in the agreement stating the parties' intention to benefit a third party is sufficient to establish an intent to permit a third party's enforcement. *Id*. at 460.

According to the Amended Complaint filed by Plaintiff / Counterclaim Defendant ExpertConnect, Fowler and ExpertConnect entered into the separation agreement after ExpertConnect informed Fowler that it was planning to terminate her position. The agreement states that it is being entered "to aid [Fowler] in [her] employment transition." The nondisparagement provision states that ExpertConnect agrees to "cause its senior management not to issue, authorize or condone any disparaging comments or statements about [Fowler] in any

manner likely to be harmful to [Fowler] or [Fowler's] business, professional or personal reputation." ExpertConnect's senior management is therefore expressly forbidden from issuing, authorizing or condoning disparaging comments about Fowler that are likely to harm her business, which is Strafluence. Although Strafluence did not exist at the time the parties entered into the agreement, it reflects the parties' mutual understanding that Fowler would transition from ExpertConnect to a new business or employment, which neither party could identify by name at the time they executed the agreement, but which was clearly contemplated and turned out to be Strafluence. This is sufficient to establish the parties' intent to permit Strafluence's enforcement of the non-disparagement provision. *See id*.

## IV.  CONCLUSION

For the reasons herein, Counterclaim and Third-Party Defendants' motion to dismiss is granted in part and denied in part. The defamation per se claim survives solely with respect to the defamatory statements made in the email correspondence. The claim for tortious interference survives except as to Broyles' liability for statements to JMP regarding possible criminal conduct by Fowler and Parma. The breach of contract claim survives as brought by both Strafluence and Fowler. The Clerk of Court is respectfully directed to close docket number 181.

Dated: July 10, 2020
       New York, New York

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

12